UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 2:13-CR-00037-1-JRG |
| | ) | |
| DEMETRIUS ANTWAN DALTON | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Demetrius Antwan Dalton's Emergency Request for Compassionate Release [Doc. 787] and the United States' Response [Doc. 789]. For the reasons herein, the Court will deny Mr. Dalton's motion.

### I. BACKGROUND

In 2013, Mr. Dalton pleaded guilty to conspiring to distribute or possess with the intent to distribute 280 grams or more of a mixture or substance containing a detectable amount of cocaine base, or crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846. [Plea Agreement, Doc. 133; Minute Entry, Doc. 168]. At sentencing, the Court applied an advisory guidelines range of 360 months to life but, departing downward, sentenced Mr. Dalton, a career offender under USSG § 4B1.1(b), to 240 months' imprisonment. [PSR, Doc. 316, ¶ 74; Hr'g Tr., Doc. 644, at 2:17–18, 61:24–25, 62:1–2; J., Doc. 571, at 2]. Acting pro se, Mr. Dalton now moves the Court to order his compassionate release under 18 U.S.C. § 3582(c)(1)(A) because of the COVID-19 pandemic, citing underlying medical conditions that include borderline diabetes, high blood pressure, and an unspecified heart problem. [Def.'s Mot. at 1]. In response, the United States opposes Mr. Dalton's motion, arguing that his early release would be inconsistent with USSG § 1B1.13 and 18 U.S.C. § 3553(a). [United States' Resp. at 1]. Having carefully reviewed the parties' arguments, the Court is now prepared to rule on Mr. Dalton's motion.

## II. ANALYSIS

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). Although § 3582(c)(1)(A) begins with the declaration that "[t]he court may not modify a term of imprisonment once it has been imposed," Congress enacted the First Step Act, Pub. L. No. 115-319, 132 Stat. 5194 (2018), which amended § 3582(c)(1)(A) so that courts can consider motions for compassionate release once a defendant either exhausts his administrative remedies with the Bureau of Prisons or waits thirty days after submitting a request to the warden:

> The court may not modify a term of imprisonment once it has been imposed except that . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment[.]

§ 3582(c)(1)(A). The United States concedes that "[t]he Court has authority to consider [Mr. Dalton's] motion because he submitted a request for compassionate release to the Bureau of Prisons more than 30 days ago." [United States' Resp. at 1].

Under § 3582(c)(1)(A), the Court's task is to determine whether (1) "extraordinary and compelling reasons" warrant a reduction and whether (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" and "the factors set forth in section 3553(a) to the extent that they are applicable." § 3582(c)(1)(A)(i). "[C]ourts have universally turned to USSG § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a sentence reduction." *United States v. Coker*, No. 3:14-CR-085,

2

2020 WL 1877800, at *3 (E.D. Tenn. Apr. 15, 2020) (quotation omitted). The Application Notes to § 1B1.13 state that, when a defendant suffers from a medical condition, extraordinary and compelling reasons exist in two scenarios: the medical condition (1) is a terminal illness or (2) "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 n.1(A)(i)–(ii).

In considering whether Mr. Dalton's underlying conditions, against the backdrop of the COVID-19 pandemic, "substantially diminish[] [his] ability" to "provide self-care within" the prison's walls and leave him without an expectation of recovery, *id.* § 1B1.13 n.1(A)(ii), the Court turns to the Center of Disease Control's guidelines, *see, e.g.*, *Cameron v. Bouchard*, ___ F. Supp. 3d ___, 2020 WL 2569868, at *4–5 (E.D. Mich. May 21, 2020), *vacated on other grounds*, ___ F. App'x ___, 2020 WL 3867393 (6th Cir. 2020); *Awshana v. Adduccl*, 453 F. Supp. 3d 1045, 1050 (E.D. Mich. 2020); *see also Valentine v. Collier*, 140 S. Ct. 1598, 1600 n.2 (2020) (citing the CDC's guidelines in a case involving COVID-19); *cf. Sch. Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 287 (1987) (stating that "courts normally should defer to the reasonable medical judgments of public health officials" (footnote and quotation omitted)). According to the CDC's guidelines, "[p]eople of any age with the following conditions *are at increased risk* of severe illness from COVID-19":

- Cancer
- Chronic kidney disease
- COPD (chronic obstructive pulmonary disease)
- Heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies
- Immunocompromised state (weakened immune system) from solid organ transplant
- Obesity (body mass index [BMI] of 30 kg/m$^2$ or higher but < 40 kg/m$^2$)
- Severe Obesity (BMI ≥ 40 kg/m$^2$)
- Sickle cell disease

3

- Smoking
- Type 2 diabetes mellitus

*Coronavirus Disease 2019 (COVID-19): People Who Are at Higher Risk for Severe Illness*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Oct. 16, 2020). The United States concedes that at least one of Mr. Dalton's medical conditions constitutes an extraordinary and compelling reason for his release under § 1B1.13. [United States' Resp. at 10].

But the fact that Mr. Dalton is an at-risk individual under the CDC's guidelines does not, in and of itself, entitle him to compassionate release. Before ordering compassionate release, the Court also has to determine that (1) he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," (2) a reduced sentence is consistent with §3553(a)'s factors, to the extent they are applicable, and (3) a reduced sentence is otherwise consistent with USSG § 1B1.13's policy statements. USSG § 1B1.13(2)–(3); *see* § 3582(c)(1)(A) (providing that "[t]he court may not modify a term of imprisonment once it has been imposed except that . . . such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" and "the factors set forth in section 3553(a) to the extent that they are applicable"); *United States v. Resnick*, 451 F. Supp. 3d 262, 265 (S.D.N.Y. 2020) ("The First Step Act did not amend the eligibility requirements for compassionate release, which are set forth in 18 U.S.C. § 3582(c)(l)(A) and Section 1B1.13 of the United States Sentencing Guidelines.").

### A. Danger to the Safety of Others or the Community

Section 3142(g) contains the factors that courts must consider in determining whether a defendant should be detained pending trial, and it states:

> (g) Factors to be considered.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the

4

person as required and the safety of any other person and the community, take into account the available information concerning—

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Having considered § 3142(g)'s factors and refamiliarized itself with Mr. Dalton's presentence investigation report, the Court is of the conviction that Mr. Dalton would pose a danger to the community if it were to order his release under § 3582(c)(1)(A). As for the nature and circumstances of Mr. Dalton's offense and the weight of the evidence against him, Mr. Dalton admittedly conspired to distribute large amounts of crack cocaine throughout Northeast Tennessee. [Plea Agreement at 2–12; PSR ¶ 11].[1] Mr. Dalton was the lead defendant in the multi-

---

[1] As a general matter, when a defendant does not "produce some evidence that calls the reliability or correctness of the alleged facts [in the PSR] into question," a district court "may rely entirely on the PSR." *United States v. Lang*, 333 F.3d 678, 681 (6th Cir. 2003) (quotation omitted); *see United States v. Roark*, 403 F. App'x 1, 4 n.2 (6th Cir. 2010) ("[T]he PSR *is* evidence, at least in the sense that it may be considered at sentencing." (citing *United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir. 1992))).

5

defendant conspiracy and admitted he "was a primary source of supply and distributor of crack cocaine" throughout Northeast Tennessee. [PSR ¶ 12].[2] According to Mr. Dalton's lengthy criminal record, he had been trafficking cocaine since at least 2001, [*id.* ¶ 89], and he has stated that he sold drugs because he "knows nothing else." [*id.* ¶ 66]. At sentencing, he qualified as a career offender under USSG § 4B1.1, and his criminal history category was VI—the highest possible category. [*Id.* ¶ 95].

Because of Mr. Dalton's long-standing status as a drug dealer—and in this case, a prominent drug dealer—the Court is unable to conclude that he would not present a danger to the community if it were to order his release. *See United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) ("To be sure, drug trafficking is a serious offense that, in itself, poses a danger to the community." (citations omitted)); *United States v. McIver*, No. 5:17-069-DCR, 2020 WL 3964714, at *4 (E.D. Ky. July 13, 2020) ("[A] sentence reduction is not warranted because [the defendant] presents a real and continuing danger to the community. He has a long history of committing controlled substance offenses and he qualified as a career offender under U.S.S.G. § 4B1.1 at sentencing." (citations omitted)). Mr. Dalton therefore fails to show that § 3142(g)'s factors entitle him to release under § 3582(c)(1)(A).

### B. Section 3553(a)'s Factors

Because the Court is not satisfied that Mr. Dalton would not present a danger to the community if it were to order his release, it has no need to engage in a lengthy discussion of § 3553(a)'s factors.[3] Also, because the Court "considered the relevant factors in some depth at

---

[2]At sentencing, Mr. Dalton received a three-level enhancement under USSG § 3B1.1(b) for his role as manager or supervisor in the conspiracy. [PSR ¶ 71].

[3] These factors include the "nature and circumstances of the offense"; the "history and characteristics of the defendant"; the "need for the sentence imposed" to "reflect the seriousness of the offense," to "promote respect for the law," and "to provide just punishment for the offense"; the "sentencing range established" for the defendant's

the original sentencing," it is under no obligation to readdress all of those factors now. *United States v. Curry*, 606 F.3d 323, 331 (6th Cir. 2010); *see United States v. Jones*, 407 F. App'x 22, 25 (6th Cir. 2011) (recognizing that in *Curry* "we held that the district court did not abuse its discretion even though it had not expressly considered all of the § 3553(a) factors" because "§ 3582(c)(2) proceedings 'do not constitute a full resentencing of the defendant' and do not require the same procedural formalities as plenary sentencings" (quoting *id.* at 330–31)); *see* [Hr'g Tr. at 40:10–25, 60:1, 61:1–25, 62:1–2, 62:13–17 (considering each of § 3553(a)'s factors in detail)].

As the Court acknowledged during Mr. Dalton's sentencing hearing, Mr. Dalton's offense—a conspiracy to distribute or possess with the intent to distribute 280 grams or more of crack cocaine—is "a very serious offense" and "involv[ed] a very, very dangerous drug, and a large quantity of that drug." [Hr'g Tr. at 61:2–4]; *see Stone*, 608 F.3d at 947 n.6 (referring to drug trafficking as "a serious offense"). Partly to reflect the seriousness of Mr. Dalton's offense, the Court sentenced him to 240 months' imprisonment, but to date, he has served less than half of that sentence. *See United States v. Kincaid*, 802 F. App'x at 187, 188 (6th Cir. 2020) (stating that "the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate"). Mr. Dalton's release would therefore result in a substantial reduction in his sentence, which would not reflect the seriousness of his offense, would not promote respect for the law or afford adequate deterrence, and would not adequately protect the public from future crimes. 18 U.S.C. § 3553(a)(2). And if the Court

---

offense; and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(1)–(2), (4), (6).

were to grant a substantial reduction in Mr. Dalton's sentence by ordering his release, it would risk creating "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(6).

Finally, "courts may consider post-sentencing conduct in assessing the § 3553(a) factors when considering whether to adjust a previously imposed sentence." *United States v. Allen*, 956 F.3d 355, 358 (6th Cir. 2020) (citing *Pepper v. United States*, 562 U.S. 476, 487–93 (2011))); *id.* at 357 (stating that "[t]he First Step Act does not prohibit courts from considering the factors outlined in § 3553(a)" (citation omitted)). In this vein, the United States Probation Office has informed the Court that Mr. Dalton has incurred numerous, serious disciplinary infractions during his incarceration, including "arranging for drugs to be entered" into the prison system and "possessing a hazardous tool." *See id.* at 356 (concluding that the First Step Act "does not prohibit courts from considering a defendant's post-sentencing conduct when deciding whether to reduce his sentence" and holding that the district court erred in concluding otherwise). These infractions do not work in favor of Mr. Dalton's release—and, in sum, neither do § 3553(a)'s factors.

### C. USP Beaumont

Lastly, the Court would be remiss if it did not mention that a prisoner's compassionate release is an extraordinary and rare occurrence, *see United States v. Dusenbery*, No. 5:91-cr-291, 2019 WL 6111418, at *2 (N.D. Ohio Nov. 18, 2019) (observing that "[c]ompassionate release due to a medical condition is an extraordinary and rare event" (quotation omitted)), and the general threat of COVID-19—that is, the fear that it may infiltrate a prison's population—cannot justify it, *see United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot

independently justify compassionate release[.]"); *United States v. Smoot*, No. 2:19-CR-20, 2020 WL 1501810, at *3 (S.D. Ohio Mar. 30, 2020) ("The mere possibility of an outbreak at his facility does not equate to a compelling enough reason to justify [the defendant's] release." (citation omitted)); *United States v. Eberhart*, ___ F. Supp. 3d ___, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("[A] reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A).").

Mr. Dalton depicts a dire scene at USP Beaumont, the facility where he is incarcerated. According to Mr. Dalton, "60% of [his] unit is sick," is "dry coughing," and is "wrapped up sweating." [Def.'s Mot. at 1]. He says that over a two-day span in August, sixteen people tested positive in his unit. [*Id.*]. That may be, but currently, COVID-19 is not affecting USP Beaumont to the same degree as other federal facilities throughout the country. The Federal Bureau of Prisons ("BOP") reports only three active cases among the inmates and three active cases among the staff at USP Beaumont. *COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last updated Oct. 21, 2020). And in an opinion dating back to August, one district court recognized that the number of active cases at USP Beaumont was relatively low then too. *See United States v. Aguilar*, No. 5:02-CR-40035-001, 2020 WL 4581739, at *1 (D. Kan. Aug. 3, 2020) (noting that one inmate and three staff members were, at the time, positive for COVID-19).

Under these circumstances, Mr. Dalton is not entitled to compassionate release. *Cf. United States v. You*, No. 20-5390, at 2 (6th Cir. Apr. 22, 2020) (PACER) (noting the scarcity of "COVID-19 cases at [the defendant's] present facility" and observing that "her facility has implemented precautionary measures to protect those detained in the facility"); *see Raia*, 954

9

F.3d at 597 (referring to the BOP's "extensive and professional efforts to curtail the virus's spread" (citation omitted)); *United States v. Elebesunu,* No. GJH-13-008, 2020 WL 3791978, at *2 (D. Md. July 7, 2020) ("Under circumstances such as these where the number of cases at the facility is low and BOP appears to have controlled the spread, the imminence of the risk to [the defendant] is diminished and weighs against granting compassionate release." (citation omitted)); *United States v. Arafat*, No. 12-cr-45, 2020 WL 3790727, at *6 (D. Minn. July 7, 2020) ("[E]ven assuming [the defendant's] underlying medical conditions exist, [he] has failed to demonstrate a particularized risk of contracting the disease. To date, FCI-Sandstone has only one reported case of COVID-19." (citation omitted)).

Besides, the Court is not inclined to take Mr. Dalton's characterization of the conditions at USP Beaumont at face value because Mr. Dalton's motion does not appear to have come from him at all but from "Tierra Dalton" of "Union City, GA," which is the name and return address on the envelope containing the motion. Mr. Dalton has not even signed the motion. The Court is certainly not willing to accept the point of view of someone who does not reside at USP Beaumont—a point of view that is not firsthand and may very well be embellished. And more importantly, the Court can consider a request for relief only from an individual who is actually a party to a case, and that party, to obtain relief, must either file a motion through an attorney or, if he does not have an attorney, file a motion pro se—that is, on his own behalf. *See* E.D. Tenn. L.R. 83.4(a), 83.13. The Court cannot consider Tierra Dalton's motion on Mr. Dalton's behalf because she is neither an attorney of record nor a party to this case. *Id.*

### III. CONCLUSION

In sum, the Court sympathizes with Mr. Dalton's concerns, but he is not entitled to compassionate release under § 3582(c)(1)(A) because USSG § 1B1.13 and § 3553(a)'s factors

10

militate against his release. His Emergency Request for Compassionate Release [Doc. 787] is therefore **DENIED**.

So ordered.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE